**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VELOS MEDIA, LLC, | CASE NO. No. 1:25-cv-00967-ADA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| BYTEDANCE LTD., BYTEDANCE PTE. LTD., BYTEDANCE INC., BYTEDANCE TECHNOLOGY LTD., TIKTOK LTD., TIKTOK PTE. LTD., AND TIKTOK INC., | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO VELOS'S MOTION FOR ANTI-INTERFERENCE INJUNCTION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................1

    A.    The Parties and Velos's Standard-Essential Patents ...............................1

    B.    The Licensing Negotiations ....................................................................2

    C.    The Western District of Texas Action .....................................................2

    D.    The Chinese Rate-Setting Action.............................................................3

    E.    The Brazil Action....................................................................................4

    F.    The Parties' Correspondence and Velos's Rush to File............................4

    G.    TikTok's Anti-Interference Filing in China............................................5

III.   VELOS'S   MOTION   IS   PROCEDURALLY   AND   SUBSTANTIVELY
       DEFICIENT ..........................................................................................................6

    A.    Velos Failed to Comply with Local Rule CV-7(g) .................................6

    B.    Velos Mischaracterizes Its Motion, and No Court Has Granted Relief It
        Seeks ......................................................................................................7

IV.    THE UNTERWESER FACTORS DO NOT SUPPORT AN INJUNCTION...................9

    A.    The Chinese Action Does Not Frustrate Any Policy of the Forum ......................10

    B.    The Chinese Action Is Not Vexatious or Oppressive .............................12

    C.    The Chinese Action Does Not Threaten This Court's Jurisdiction ......................17

    D.    Equitable Considerations Favor TikTok, Not Velos................................17

    E.    International Comity Weighs Heavily Against an Injunction..............................19

V.     CONCLUSION ...................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Amazon.com, Inc. v. Nokia of America Corp.*,
  2025 WL 220301 (D. Del. Jan. 16, 2025)................................................................14

*Apple Inc. v. Qualcomm Inc.*,
  2017 WL 3966944 (S.D. Cal. Sep. 7, 2017)....................................................13, 16

*BMW v. Onesta*,
  No. 6:25-cv-00581-ADA (W.D. Tex. Jan. 15, 2026) .............................................8

*Brown v. Duchesne*,
  60 U.S. 183 (1857)................................................................................................19

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
  569 F.3d 189 (4th Cir. 2009) ................................................................................18

*Ericsson Inc. v. Apple Inc.*,
  2022 WL 19403865 (E.D. Tex. July 28, 2022) ....................................................12

*Ericsson Inc. v. D-Link Systems, Inc.*,
  2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in part,*
  *rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) ......................................................12

*Ericsson Inc. v. Samsung Electronics Co.*,
  2021 WL 89980 (E.D. Tex. Jan. 11, 2021)...........................................7, 8, 9, 15, 20

*Ericsson v. Samsung*,
  No. 2:20-CV-00380, Dkt. 11 ................................................................................16

*Gau Shan Co., Ltd. v. Bankers Tr. Co.*,
  956 F.2d 1349 (6th Cir. 1992) ...........................................................................9, 17

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
  12 F.4th 476 (5th Cir. 2021) .............................................................................15, 19

*Innovation First Int'l v. Zuru, Inc.*,
  513 F. App'x 386 (5th Cir. 2013) .........................................................................18

*InterDigital Tech. Corp. et al. v. Lenovo Group Limited*
  [2023]....................................................................................................................18

*Jacob v. City of New York*,
  315 U.S. 752 (1942)..............................................................................................11

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) ...............................................................................10, 13

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ...................................................................9, 10, 19, 20

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ..................................................................9, 17, 19

*MacPhail v. Oceaneering Int'l, Inc.*,
    302 F.3d 274 (5th Cir. 2002) ...............................................................................11

*Markman v. Westview Instrs., Inc.*,
    517 U.S. 370 (1996).............................................................................................11

*Microsoft Corp. v. Motorola, Inc.*,
    795 F.3d 1024 (9th Cir. 2015) .............................................................................11

*Murthy v. Missouri*,
    603 U.S. 43 (2024)................................................................................................8

*MWK Recruiting Inc. v. Jowers*,
    833 F. App'x 560 (5th Cir. 2020) ..........................................................10, 12, 15, 20

*Optis Cellular Technology LLC v. Apple Retail UK Ltd*
    [2025] .................................................................................................................18

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*,
    2019 WL 1244707 (E.D. Tex. Mar. 18, 2019) .......................................................12

*Perkins v. United Parcel Service of America, Inc.*,
    2024 WL 1493808 (W.D. Tex. Apr. 5, 2024).........................................................6

*Roku, Inc. v. Access Advance*,
    No. 1:24-CV-13217, Dkt. 52 (D. Mass July 22, 2025)...........................................12

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006)....................................................................................9

*Sharp Corp. v. OPPO Guangdong Mobile Telecomms. Co.*
    2020 Zhi Min Xia Zhong No. 517 (Sup. People's Ct. Aug. 19, 2021)....................11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)..............................................................................................18

*Source Bank v. Neto*,
    861 F.3d 607 (7th Cir. 2017) ...............................................................................13

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
    2018 WL 4488286 (C.D. Cal. Sept. 14, 2018), *rev'd in part, vacated in part*,
    943 F.3d 1360 (Fed. Cir. 2019)........................................................................................12, 15

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*,
    2009 WL 4716037 (E.D. Wash. Dec. 8, 2009).......................................................................13

*Thermo Fisher Sci. Inc. v. Ducharme*,
    2008 WL 11399557 (S.D. Tex. Sept. 30, 2008) ....................................................................13

*In re Unterweser Reederei, Gmbh*,
    428 F.2d 888 (5th Cir. 1970) ...........................................................................................9, 13

*Unwired Planet Intern. Ltd v Huawei Techs. Co.*
    [2017]..................................................................................................................................11

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007)...........................................................................................19

## Other Authorities

Local Rule CV-7(g) .............................................................................................................6

## I.      INTRODUCTION

Velos holds patents it declared essential to the H.265 video compression standard.  It approached Defendants TikTok Inc., ByteDance Inc., and their affiliates (collectively, "TikTok") and demanded a worldwide license.  Without meaningfully negotiating, Velos filed this suit alleging infringement of some of its purportedly essential patents.  When TikTok, a willing licensee, exercised its right under Chinese law to ask a tribunal to determine RAND terms for the worldwide license Velos demanded, Velos—without completing the good-faith meet and confer required in this Court—filed this motion.  But Velos cannot have it both ways—demanding global royalties on a global business, then objecting when TikTok asks a court with authority to set global RAND rates to evaluate that demand.  Parallel proceedings addressing worldwide RAND terms are common and proper.  This case concerns whether TikTok infringes specific U.S. patents; the Chinese rate-setting action addresses what RAND terms apply to the worldwide license Velos demanded.  TikTok has offered to stipulate that it will not take action in the Chinese courts to interfere with this Court's jurisdiction or to deprive Velos of any rights and remedies under U.S. law regarding its U.S. patents—the very relief Velos claims to seek.  Because the Chinese action is neither duplicative nor vexatious, because it does not threaten this Court's jurisdiction, and because Velos's motion raises serious comity concerns, Velos's motion should be denied.

## II.      FACTUAL BACKGROUND

### A.      The Parties and Velos's Standard-Essential Patents

Standard Setting Organizations ("SSOs") have recognized that standards may give SEP holders market power to exploit.  To avoid this "hold-up" problem, most SSOs require holders of patents that may read on a standard to commit to licensing on RAND terms.  The International Telecommunications Union ("ITU"), whose H.265 standard is at issue here, adopted a Common

Patent Policy ("ITU Policy") governing SEPs held by standard-setting participants.[1]  It provides that "a patent embodied fully or partly in a [standard] must be accessible to everybody without undue constraints."  ITU Policy, Preamble.  Velos or its predecessors submitted ITU-T licensing declarations agreeing to grant RAND licenses for any patents essential to implementing the H.265 standard.  *See* First Amended Counterclaims ("FACC"), Dkt. 21 ¶ 25.

### B.    The Licensing Negotiations

TikTok was and remains willing to license any patents essential to implementing the H.265 standard on RAND terms.  FACC ¶ 88.  But the parties never reached substantive license negotiations; they discussed only non-disclosure terms.  FACC ¶ 71.  Velos never made any offer to TikTok—let alone a RAND offer—for a license to the Asserted Patents individually, collectively, or to the portfolio of patents to which the Asserted Patents belong.  FACC ¶¶ 68, 70. While the parties were still discussing the non-disclosure terms, Velos filed this lawsuit.

### C.    The Western District of Texas Action

On June 24, 2025, Velos filed this action.  The complaint asserts six counts of patent infringement and seeks a declaratory judgment that Velos negotiated in good faith and that TikTok failed to negotiate in good faith.  Compl. ¶¶ 73-161.  Velos seeks damages, enhanced damages, attorneys' fees, and "other equitable relief."  Compl., Prayer for Relief.

On November 13, 2025, TikTok filed an Amended Answer and Counterclaims (Dkt. 21), requesting the Court dismiss Velos's claims and enter declaratory judgment that Velos: (1) failed to negotiate in good faith toward concluding a license with TikTok; and (2) did not comply with its obligations to offer and to grant licenses on RAND terms.  FACC at 51-52.  TikTok also

---

[1]  Other standards bodies not at issue here use the term "fair, reasonable, and non-discriminatory," or "FRAND."  There is no substantive difference between RAND and FRAND, and caselaw often uses the terms interchangeably.

requested declarations regarding good-faith negotiation and entitlement to a RAND license.  *Id.*  Neither party requested the Court to set global licensing terms or RAND rates.

### D.    The Chinese Rate-Setting Action

On November 24, 2025, TikTok filed an action in the Chongqing No. One Intermediate People's Court seeking a declaration of RAND terms for a license to Velos's worldwide SEP portfolio.  Dkt. 46-2.  The Chinese complaint requests: (1) global licensing terms and royalty rates consistent with RAND principles for patents in Velos's portfolio covering the H.265 and H.266 standards; (2) litigation fees; and (3) reasonable costs.  *Id.* at 9.  The Chinese action does not seek to enjoin this litigation or adjudicate validity or infringement of U.S. patents.  It seeks only a declaration of RAND terms for the worldwide license Velos demanded.

Velos's repeated reference to TikTok's Chinese filing as "secret" (Mot. at 1, 3) reflects a misunderstanding of Chinese civil procedure.  Under Chinese law, the court—not the plaintiff—bears exclusive responsibility for serving the complaint and all litigation documents.  Wang Decl. ¶ 14.  Plaintiffs have no obligation to notify defendants, and voluntary notice carries no procedural effect—only the Chinese court can effectuate service.  *Id.*, ¶ 16.  There was nothing improper about TikTok's conduct; it properly followed the procedural norms of the forum in which it filed.[2]

Indeed, Velos's complaints about the timing of service ring hollow given that Velos has now fully engaged in the Chinese proceeding.  On January 21, 2026, Velos—represented by Chinese counsel—filed a petition for objection to jurisdiction in the Chongqing court.  *See* Hardy Decl. Ex. A.  In that filing, Velos argues that Chinese courts lack jurisdiction over the case and requests dismissal under the *forum non conveniens* doctrine, or alternatively, that the case be

---

[2] Velos complains about the timing of notice, but articulates no prejudice.  TikTok cannot control the Chinese court's processing timeline.  Wang Decl. ¶ 14.

transferred to the Beijing Intellectual Property Court. *Id.* Velos's jurisdictional challenge does not claim any prejudice from the manner or timing of service.

### E.    The Brazil Action

On December 18, 2025, TikTok filed a declaratory action in the Business Law and Arbitration Court of São Paulo, Brazil. Hardy Decl. Ex. B. The Brazilian complaint seeks declarations that: (1) ten Brazilian patents owned by Velos are not essential to the H.265/HEVC standard; (2) there is no infringement of these patents by TikTok or its business partners; and (3) to the extent any patents are found essential, Velos must grant a license on RAND terms rather than seeking injunctive relief. *Id.* Like the Chinese action, the Brazilian proceeding does not seek to enjoin this litigation or adjudicate the validity or infringement of U.S. patents.

### F.    The Parties' Correspondence and Velos's Rush to File

On January 12, 2026, Velos demanded that TikTok "stipulate that [it] will not interfere in any way with the U.S. Litigation," and respond by January 15. Dkt. 46-3. After informing Velos on January 15 that TikTok plans to respond by January 16, (Hardy Decl. Ex. C at 2), TikTok responded on January 16, explaining that the Chinese and U.S. actions "involve[] distinct claims, arising under different legal regimes," and that both proceedings could "proceed in parallel," as "is commonplace in SEP-related disputes." Dkt. 46-5. TikTok explained that the Chinese action "concerns the determination of global RAND licensing terms" while the U.S. action "involves separate issues regarding the infringement, validity, and enforceability of U.S. patents." *Id.* Velos sent an email response informing TikTok for the first time that it would file the instant motion absent a stipulation, then promptly did so without waiting for a response. Hardy Decl. Ex. C at 1.

On January 23, 2026, TikTok sent a letter to Velos proposing a stipulation designed to resolve Velos's stated concerns and avoid further motion practice. Hardy Decl. Ex. D. TikTok

represented that "ByteDance has not and will not take action in the China Action, Brazil Action, or elsewhere to interfere with the jurisdiction of the U.S. District Court for the Western District of Texas to adjudicate the validity and infringement of the United States patents asserted by Velos in the US Action" and that "ByteDance further has not taken and will not take action to deprive Velos of any rights and remedies it possesses under U.S. law regarding its U.S. patents." *Id.* TikTok also represented that "the claims in [China] are declaratory in nature and do not include a claim seeking an order requiring Velos to grant a license to United States patents." *Id.* TikTok requested, in turn, the same from Velos—namely, that "Velos has not taken and will not take action in the US Action or elsewhere to interfere with the jurisdiction of the Chinese courts" and further "has not and will not take action to deprive ByteDance of any rights and remedies it possesses under Chinese law or under Brazilian law regarding Velos's licensing efforts." *Id.*

TikTok requested that Velos withdraw its motion and respond by January 27. *Id.* Velos did neither. Instead, it waited until January 30 to respond—the day this opposition is due—but only to restate its demand and ignore TikTok's proposal. Hardy Decl. Ex. E. While repeating its demand that TikTok stipulate not to interfere with this Court's jurisdiction (something TikTok already had offered to do), Velos notably and expressly refused to make a reciprocal commitment regarding TikTok's foreign proceedings. Despite Velos's refusal, TikTok remains willing to stipulate to the relief Velos claims to seek, as offered in its January 23 letter.

### G. TikTok's Anti-Interference Filing in China

Velos's refusal to so stipulate lays bare its intention to interfere with the jurisdiction of the Chinese court to adjudicate the claims before it. As a result, TikTok had no choice but to protect its own rights and thus filed an application earlier today in the Chinese court seeking an order preventing Velos from taking actions that would interfere with that court's jurisdiction. The

motion in no way seeks to interfere with this Court's jurisdiction to adjudicate Velos's U.S. patent claims. TikTok remains hopeful that the parties can reach a framework ensuring both cases proceed without interference and will continue efforts to resolve these disputes cooperatively.

## III.    VELOS'S MOTION IS PROCEDURALLY AND SUBSTANTIVELY DEFICIENT

Before reaching the *Unterweser* factors, the Court should deny Velos's motion on threshold procedural and substantive grounds.

### A.    Velos Failed to Comply with Local Rule CV-7(g)

Local Rule CV-7(g) provides that a court "may deny a nondispositive motion unless the movant advises the court . . . that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement." Velos did not comply with this requirement.

Velos's January 12 letter was not a request to confer—it was a demand to capitulate within three days. When TikTok responded on January 16, explaining that the two proceedings address distinct legal questions and could proceed in parallel, Velos filed this motion within hours rather than engage with that response. This is not conferral; it is an ultimatum followed by a race to the courthouse. *See Perkins v. United Parcel Service of America, Inc.*, 2024 WL 1493808, *3 (W.D. Tex. Apr. 5, 2024) (denying motion where movant "filed the Motion only two business days after a *single* 'attempt to meet and confer,' which was really a one-way letter demanding" compliance).

Had Velos actually conferred, this motion would have been unnecessary. TikTok's January 23 letter demonstrates as much—it proposed a stipulation addressing Velos's stated concerns. Velos rejected this stipulation, despite TikTok agreeing to provide the very relief Velos claims to seek through this motion. There is no live controversy for this Court to adjudicate.[3]

---

[3]    The only exception is Velos's request that TikTok be ordered to "promptly email copies of any papers filed or issued by the Chinese court"—which is procedurally improper. *See* Section IV.E.

**B.      Velos Mischaracterizes Its Motion, and No Court Has Granted Relief It Seeks**

Even setting aside the procedural deficiencies, Velos's motion fails as a threshold matter because it seeks relief no court has ever granted under comparable circumstances.

Velos labels its motion as seeking an "anti-interference injunction," but this characterization is misleading. An anti-interference injunction—also called an anti-anti-suit injunction—is a specific form of relief that serves as a "defensive measure" to protect a domestic court's jurisdiction from a foreign anti-suit injunction that has ***already issued***. *See, e.g.*, *Ericsson Inc. v. Samsung Electronics Co.*, 2021 WL 89980, *4 (E.D. Tex. Jan. 11, 2021). As the *Ericsson* court explained, an anti-interference injunction exists to "prevent [a party] from attempt[ing] to enforce the ASI and thereby interfering with this Court's exercise of its own jurisdiction." *Id*. The predicate for such relief is the existence of a foreign anti-suit injunction that threatens the domestic court's ability to adjudicate the claims before it. In *Ericsson*, that predicate existed. The Wuhan Court had issued an anti-suit injunction against Ericsson, enjoining it from seeking relief in any court worldwide and threatening "substantial fines" for non-compliance. *Id.* at *2-3. It was against this specific backdrop—an existing foreign court order directly enjoining Ericsson from litigating in U.S. courts—that the *Ericsson* court found an anti-interference injunction warranted.

Here, no such predicate exists. No Chinese court has issued any injunction or taken any action interfering with this litigation. There is simply nothing to "anti" in this case.[4] What Velos seeks is an ***offensive*** anti-suit injunction ("ASI")—an order from this Court affirmatively enjoining TikTok from prosecuting its claims in a foreign forum—dressed up as a defensive measure. The Court should not be misled by Velos's nomenclature.

---

[4]    In contrast, the anti-interference motion filed by TikTok earlier today is strictly directed to preventing Velos from interfering with the Chinese court's jurisdiction; it in no way requests interference with this case, which TikTok has consistently maintained should proceed in parallel.

Velos's motion seeks extraordinary relief that no court has granted on comparable facts. Velos cites no case—and TikTok is aware of none—where a U.S. court issued an anti-suit or anti-interference injunction against a foreign rate-setting action absent a foreign injunction against the U.S. patent holder relating to U.S. litigation. Even in *Ericsson*, where an ASI had issued, Judge Gilstrap substantially limited the relief—declining to order Samsung to withdraw the ASI, declining to bar Samsung from participating in the Chinese action, declining to require Samsung to promptly send documents filed in the Chinese action to Ericsson, and declining to require Samsung to operate in a foreign jurisdiction as though it were in the United States. *Id.* at *8.

What the court did order was limited to preventing Samsung from taking action in the Chinese proceeding that would interfere with the Texas court's jurisdiction or that would deprive Ericsson of its rights to assert the full scope of its U.S. patent rights. *Id.* at *7. TikTok has already agreed to stipulate to precisely those terms, which Velos rejected. Hardy Decl. Ex. D. There is no basis to grant any relief beyond what TikTok has already offered—and no precedent for granting relief in the absence of any foreign court order threatening the movant's ability to litigate.[5]

Velos also seeks an injunction against speculative future harm. The Supreme Court has held that forward-looking injunctive relief requires "a substantial risk that, in the near future," harm will occur—not a "speculative chain of possibilities." *Murthy v. Missouri*, 603 U.S. 43, 58, 70 (2024). Here, no Chinese court has issued any injunction or threatened any penalties. TikTok has offered to stipulate it will not seek any order that would interfere with this Court's jurisdiction

---

[5] This Court recently granted an anti-suit injunction in *BMW v. Onesta*, No. 6:25-cv-00581-ADA (W.D. Tex. Jan. 15, 2026), but that case is distinguishable. There, the defendant was asserting U.S. patents in German courts—seeking to have a foreign tribunal adjudicate the validity and infringement of U.S. patents. *See* Dkt. 31 at 1 (ordering defendant "to terminate its lawsuits in Germany asserting United States patents"). TikTok has not asserted any U.S. patents in China. The Chinese action is a rate-setting proceeding. *BMW* does not support an injunction here.

or Velos's U.S. patent rights.  Hardy Decl. Ex. D.  Velos's fears are precisely the speculation *Murthy* found insufficient to warrant injunctive relief.

## IV.    THE UNTERWESER FACTORS DO NOT SUPPORT AN INJUNCTION

Even if the Court reaches the merits of Velos's motion, none of the *Unterweser* factors supports an injunction.  Velos does not dispute that the *Unterweser* framework applies here.  Mot. at 4-5.  Indeed, in *Ericsson v. Samsung*, the court confronted a closer procedural question—the Wuhan Court had issued an anti-suit injunction—and still applied the *Unterweser* framework to the requested anti-interference injunction, noting that the Fifth Circuit has not distinguished between the two for purposes of this analysis.  2021 WL 89980, *4.

Under that framework, courts presume concurrent jurisdiction when domestic and foreign lawsuits involve similar parties and issues.  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 372 n.59 (5th Cir. 2003).  "Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict." *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006).  Anti-suit injunctions are "a much greater interference with an independent country's judicial process," and should only be issued "when the ***strongest equitable factors*** favor its use." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 931 (D.C. Cir. 1984) (emphasis added); *Gau Shan Co., Ltd. v. Bankers Tr. Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992) ("[P]arallel proceedings . . . should ordinarily be allowed to proceed simultaneously.").

To obtain relief, Velos must show that the *Unterweser* factors favor an injunction: whether the Chinese action would (1) frustrate a policy of the forum; (2) be vexatious or oppressive; (3) threaten this Court's jurisdiction; or (4) prejudice other equitable considerations.  *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir. 1970).  Even where these factors support an

injunction, they must be weighed against principles of international comity. *Karaha Bodas*, 335 F.3d at 366; *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996).

Contrary to Velos's suggestion, (Mot. at 5), anti-suit injunctions in the Fifth Circuit remain "an extraordinary remedy" and "the exception rather than the rule." *Karaha Bodas*, 335 F.3d at 363-64. Velos cites *Quaak v. Klynveld* for the proposition that the Fifth Circuit "is more permissive of antisuit injunctions." Mot. at 5 (citing 361 F.3d 11, 17 (1st Cir. 2004)). But *Quaak* does not so hold. The First Circuit observed only that, in weighing the *Unterweser* factors against international comity, the Fifth Circuit assigns comity "modest weight." *Quaak*, 361 F.3d at 17; *see MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 562 (5th Cir. 2020). That does not relieve Velos of its burden to show why an extraordinary remedy is necessary here.

## A.    The Chinese Action Does Not Frustrate Any Policy of the Forum

The first *Unterweser* factor does not favor an injunction. Velos contends the Chinese action threatens this litigation by (1) asking the Chinese court to adjudicate validity and essentiality, and (2) seeking "global licensing terms." Mot. at 6-8. Neither argument holds water.

***First***, the Chinese action seeks a determination of RAND licensing terms—a contractual question—not adjudication of U.S. patent validity or infringement. When Velos declared patents essential to the H.265 standard, it made a voluntary commitment to the ITU to license those patents on RAND terms. ITU Policy, Preamble (patents "must be accessible to everybody without undue constraints"). RAND rate-setting asks what royalty satisfied the patent holder's SSO commitment, and the Chinese court will determine what licensing terms are consistent with the RAND principles Velos agreed to honor. This Court, in contrast, will evaluate whether TikTok infringes valid U.S. patent claims and, if so, what remedies are appropriate under U.S. patent law. Contrary to Velos's argument, there is no "risk of conflicting judgments" that will "threaten [this Court's] ability to

10

properly resolve United States patent disputes." Mot. at 7; *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1040 (9th Cir. 2015) (reiterating that RAND determination is "not a patent law action"). The Chinese action in no way encumbers this Court from carrying out its Article III duty. Velos remains free to assert its U.S. patents here and seek appropriate relief.

    ***Second***, Velos complains that no foreign tribunal should compel licensing of U.S. patents. Mot. at 7-8. But the Chinese action is a rate-setting proceeding; TikTok has not asked the Chinese court to compel Velos to license anything. Indeed, TikTok has expressly represented that "the claims in [China] are declaratory in nature and ***do not include*** a claim seeking an order requiring Velos to grant a license to United States patents." Hardy Decl. Ex. D (emphasis added). To the extent Velos's U.S. patent rights are encumbered, that results from the RAND commitment Velos voluntarily assumed by declaring its patents essential and promising to license them on RAND terms. Velos cites no authority holding its rights are violated when a foreign court considers the legal effect of such global contractual commitments, and the Fifth Circuit has rejected that argument. *See MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277–78 (5th Cir. 2002). Velos's Seventh Amendment rights are not at risk. Velos will have a jury trial on infringement and damages in this forum; the Chinese action does not affect that right.[6] But Velos cannot—through this motion—contend that foreign courts do not have the power to set RAND rates for global patent portfolios absent a U.S. jury. *Unwired Planet Intern. Ltd v Huawei Techs. Co.* [2017] EWHC 2988 (Pat) (Eng. & Wales); *Sharp Corp. v. OPPO Guangdong Mobile Telecomms. Co.*, 2020 Zhi Min Xia Zhong No. 517 (Sup. People's Ct. Aug. 19, 2021).

---

[6] Velos cites *Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 377 (1996) and *Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942). Those cases stand for the unremarkable proposition that infringement cases must be tried by a jury. Velos will have its jury trial on its infringement claims; the jury will decide whether TikTok infringes and, if so, what damages are appropriate. But neither cited case suggests Velos has a right to a jury trial in U.S. courts for (F)RAND rate-setting.

Velos's displeasure with foreign rate-setting authority does not establish frustration of a forum policy. *Ericsson Inc. v. Apple Inc.*, 2022 WL 19403865, *4 (E.D. Tex. July 28, 2022) ("pressure" litigant feels from foreign action "has no effect on this Court"). Furthermore, U.S. courts generally lack authority to set global RAND rates. *Roku, Inc. v. Access Advance*, No. 1:24-CV-13217, Dkt. 52 (D. Mass July 22, 2025) ("The court lacks jurisdiction to determine the FRAND rate as requested"); *Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 2019 WL 1244707 (E.D. Tex. Mar. 18, 2019) ("declin[ing] to issue a declaratory judgment as to" "whether [] worldwide, non-segregable offer is FRAND" because "any declaration by the Court would amount to an advisory opinion"); *Ericsson Inc. v. D-Link Systems, Inc.*, 2013 WL 4046225, *21 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) ("Defendants asked the Court to determine an appropriate RAND rate . . . This would have amounted to nothing more than an advisory opinion."); *see also TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 4488286, *4 (C.D. Cal. Sept. 14, 2018), *rev'd in part, vacated in part*, 943 F.3d 1360 (Fed. Cir. 2019) (undertaking rate determination but only where TCL "agreed to be bound by the Court's determination of FRAND terms and conditions for a worldwide portfolio license"). Velos articulates no reason why a foreign proceeding addressing a question this Court cannot resolve, without consent, frustrates forum policy.

B.    **The Chinese Action Is Not Vexatious or Oppressive**

The second factor also does not support an injunction. Velos must show (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the case; and (3) the extent to which the foreign suit is duplicative of the U.S. litigation. *MWK Recruiting*, 833 F. App'x at 562. Rather than address these elements, Velos argues that for "a defensive anti-interference injunction," the court considers

whether it would be vexatious to require the nonmovant to litigate in the U.S.  Mot. at 8 (citing *Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, 2009 WL 4716037, *4 (E.D. Wash. Dec. 8, 2009)).  This argument reflects the same mischaracterization addressed above: Velos labels its motion as seeking "defensive" relief to invoke a more favorable legal standard, when in fact it seeks offensive relief to interfere with TikTok's foreign litigation.  *See* Section III.B, *supra*.  In any event, *Teck Metals* does not support the legal standard Velos advances.  The *Teck Metals* court applied the traditional *Underweser* framework; the passage Velos cites—that it would not be vexatious to require the defendants to litigate in the U.S.—is a factual finding under that framework, not a modified legal standard as Velos leads this Court to believe.  *Id.* at *3-4.

Unsurprisingly given it ignored the correct test, Velos cannot satisfy the Fifth Circuit's standard.  ***First***, no inequitable hardship results from the Chinese action and Velos has cited none. Velos is a sophisticated global licensing enterprise that approached TikTok and demanded a worldwide license encompassing royalties on revenues from China and other foreign markets. Having voluntarily engaged the Chinese market and sought payment from entities with substantial Chinese operations, Velos cannot credibly claim that proceedings in China constitute inequitable hardship.  Velos argues that it would "suffer" because of the "unwarranted inconvenience and expense of having to litigate simultaneous cases at great distance."  Mot. at 9 (citing *Kaepa*, 76 F.3d at 627 and *Underweser*, 428 F.2d at 896).  But that conclusory assertion is unsupported and legally insufficient.  *Thermo Fisher Sci. Inc. v. Ducharme*, 2008 WL 11399557, *6 (S.D. Tex. Sept. 30, 2008).  Moreover, courts have recognized that inequitable hardship is particularly difficult to establish when the foreign action is not duplicative of the domestic suit.  *See id.*; *Source Bank v. Neto*, 861 F.3d 607, 614-615 (7th Cir. 2017); *Apple Inc. v. Qualcomm Inc.*, 2017 WL 3966944, *14-15 (S.D. Cal. Sep. 7, 2017) ("Any defendant who faces parallel litigation in a foreign

suit will be inconvenienced [and] will bear the costs of defending themselves in each. . . . Equity does not demand that a court enjoin a non-identical parallel proceeding simply because it is burdensome to defend oneself."). That is the case here. There is no evidence that Velos—again, a global patent licensing operation that approached a company with a large business presence in China regarding a worldwide license—lacks the resources to effectively represent itself in China. Velos's Chinese counsel filing a jurisdictional challenge in the Chinese action, advancing multiple legal theories under Chinese law, belies any notion of inequitable burden. Hardy Decl. Ex. A.

**Second**, the Chinese action will not frustrate or delay this litigation. In fact, Velos does not dispute this—nor could it. TikTok is prepared to litigate both in parallel.[7] Parallel litigation is the norm in global SEP disputes. SEP holders routinely assert patents in multiple jurisdictions while RAND terms are adjudicated elsewhere. For example, it is common to litigate declared essential U.S. patent issues here while European courts address European patents from the same portfolio. *See, e.g.*, *Amazon.com, Inc. v. Nokia of America Corp.*, 2025 WL 220301 (D. Del. Jan. 16, 2025) (parallel litigation across multiple jurisdictions regarding H.265/HEVC standard). The Chinese proceeding is no different. The two actions can proceed simultaneously because they address different questions: this Court adjudicates U.S. patent claims; the Chinese court determines worldwide RAND terms. The existence of the China action will not affect this Court's determination, or vice versa. Neither proceeding depends on or interferes with the other.

**Third**, the two actions are not duplicative. Velos calls the Chinese action "ByteDance's gambit" and states that the "Chinese court [will] adjudicate the very same United States patents at issue in this lawsuit." Mot. at 9. To begin, the Chinese action concerns 450 global patent assets—

---

[7]  Although it is not the subject of Velos's motion, the same is true of TikTok's action in Brazil—i.e., that case, which does not overlap with this case at all, can and should proceed in parallel.

patents spanning multiple countries and jurisdictions—not merely the six U.S. patents asserted in this litigation. Regardless, even the fact that the same patents or licensing history is at issue in the Chinese action does not support an anti-suit injunction. The "duplicative factor is about legal, not *factual*, similarity." *MWK Recruiting*, 833 F. App'x at 564. Suits are duplicative only "where they involve the same or similar legal bases or identical claims." *Id*. at 564 (cleaned up). A factual relationship—such as arising from the same dispute or patents—is insufficient.

The two actions involve distinct legal questions. This action asks whether the Asserted Patents are valid and whether TikTok infringes; whether the parties complied with RAND obligations; and what damages are appropriate. The Chinese action asks what RAND terms should govern a worldwide license. These are different inquiries. As the *Ericsson* court recognized: "The Chinese Action and this suit may be factually similar but involve ***very separate legal questions*** . . . The Wuhan Court is asked to provide a number. This Court is asked to evaluate conduct." 2021 WL 89980, *6 (emphasis added)*; see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 485 (5th Cir. 2021) ("The act of determining the value of a standard-essential patent for purposes of calculating damages is distinct from assessing whether a particular offer made during unique licensing negotiations was fair and reasonable."). U.S. damages awards compensate for a patent found valid and infringed; a RAND rate reflects portfolio value across hundreds of patents, without adjudicating whether the patents in that portfolio are all valid and infringed. *See, e.g.*, *TCL Commc'ns*, 2018 WL 4488286 (setting a FRAND rate using a top-down approach, "which begins with an aggregate royalty for all patents encompassed in a standard, then determines a firm's portion of that aggregate," and applying "a simple patent counting system which treats every patent as possessing identical value"). The Chinese court will also apply established methodologies to determine an appropriate RAND rate—not adjudicate specific patents. Wang Decl. ¶¶ 20-21.

Courts in the U.S., U.K., and China all agree on this distinction. *See Sharp v. OPPO*, Zhi Min Xia Zhong No. 517  at 14-16 (rate-setting suit addresses global royalty rate; patent infringement suit addresses damages for established infringement); *Unwired Planet* [2020] UKSC 37, [64] (implementers may challenge patents in foreign courts after global rate is set); *Apple v. Qualcomm*, 2017 WL 3966944, *12 (setting worldwide FRAND rate would not address foreign patent claims).

Velos protests that the Chinese court will adjudicate U.S. patents because TikTok's complaint in China requests a determination of royalty rates for patents that are "valid and genuinely essential" to the H.265 and H.266 standards. Mot. at 7. But that language reflects standard pleading practices in Chinese (F)RAND proceedings; it does not mean the Chinese courts will conduct patent-by-patent adjudication of validity or infringement. Wang Decl. ¶¶ 20-21. In determining a global (F)RAND rate, Chinese courts do not undertake individualized validity or infringement analyses for each patent in the portfolio. *Id*. Rather, the court's analysis proceeds at the portfolio level, treating the SEP holder's declared patent families as a collective body of rights. *Id*. Chinese courts rely on proxies such as the number of declared patent families, third-party essentiality studies, or sampling-based assessments—methodologies that provide statistical approximations rather than definitive legal determinations regarding any single patent. *Id.* The resulting royalty determination does not constitute a ruling on the validity or essentiality of any particular patent, and individual patents remain subject to separate challenge in appropriate proceedings. *Id.* Thus—as TikTok has repeatedly explained to Velos—the China court will not adjudicate the validity or infringement of Velos's U.S. patents; the Chinese action will only determine what royalty satisfies a global RAND commitment.[8]

---

[8]  As for U.S. claims on licensing conduct, counsel for Velos has previously recognized that such claims are distinct from rate-setting. *Ericsson v. Samsung*, No. 2:20-CV-00380, Dkt. 11 at 10.

### C.    The Chinese Action Does Not Threaten This Court's Jurisdiction

The third *Unterweser* factor—threat to this Court's jurisdiction—also does not support an injunction. Velos effectively concedes this point, relegating it to a footnote. Mot. at 10 n.3. But this factor does not merely "not apply"—it weighs against an injunction. The "threat to jurisdiction" factor developed primarily in *in rem* or *quasi in rem* contexts, where a foreign court might order transfer of property out of the forum court's jurisdiction. *See Gau Shan Co.*, 956 F.2d at 1355-57. That no such concern exists here, as Velos admits, weighs against an anti-suit injunction.

Anti-suit injunctions to protect jurisdiction are appropriate only where the concurrent proceeding effectively threatens to paralyze the jurisdiction of the court, or where the foreign court is attempting to carve out exclusive jurisdiction over the action. *Id.*; *Laker Airways*, 731 F.2d at 927. The Chinese action does neither. That the outcome of the China action may adversely impact Velos is "merely a threat to [Velos's] interest in prosecuting its lawsuit" and is "not a threat to the jurisdiction of the United States courts." *Gau Shan Co.*, 956 F.2d at 1356.

### D.    Equitable Considerations Favor TikTok, Not Velos

The fourth *Unterweser* factor—equitable considerations—does not favor Velos. Velos argues this factor favors an injunction because (1) Chinese courts lack "procedural safeguards" present in U.S. courts; and (2) "substantive United States patent law" should not "be applied by Chinese judges who are inexperienced in this area." Mot. at 10-11. Neither argument has merit.

*First*, the Court should reject Velos's attack on the Chinese court system. Velos invokes an isolated 2017 statement to suggest Chinese courts are untrustworthy. Mot. at 10. This argument is both inappropriate and irrelevant. Anti-suit injunctions are not vehicles for U.S. courts to pass judgment on foreign judiciaries. *See Gau Shan Co.*, 956 F.2d at 1355 (district court should not "convey[] the message, intended or not, that the [U.S.] court has so little confidence in the foreign

court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility"). Velos cites no authority suggesting generalized criticisms of a foreign judiciary—without any showing of specific prejudice—justify an injunction. U.S. courts routinely recognize China as an adequate forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007) (deferring to Chinese court); *Innovation First Int'l v. Zuru, Inc.*, 513 F. App'x 386, 390 (5th Cir. 2013); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 199 (4th Cir. 2009); *see also* Wang Decl. ¶ 17.

In any event, Chinese courts handle thousands of patent cases annually and have developed significant expertise in (F)RAND rate-setting for global patent portfolios. Wang Decl. ¶¶ 18-19. *Id.* They have issued internationally-recognized decisions setting global (F)RAND rates. *Id.* Whatever philosophical differences may exist between the Chinese and American judicial systems, they do not justify the extraordinary remedy of an anti-suit injunction.

***Second***, Velos's concern that "substantive United States patent law [would] be applied by Chinese judges who are inexperienced in this area," (Mot. at 10), is misplaced because the Chinese court will not apply U.S. patent law. Again, the Chinese action seeks a declaration of RAND licensing terms and RAND rate-setting does not require adjudicating U.S. patent validity or infringement. Wang Decl. ¶¶ 20-21. To the extent Velos contends only U.S. courts can determine rates for U.S. patents, that argument goes too far. It would mean no foreign tribunal, even if party-chosen, could set (F)RAND rates for a portfolio including U.S. patents. That has never been the law. *Unwired Planet*; *InterDigital Tech. Corp. et al. v. Lenovo Group Limited* [2023] EWHC 529 (Pat); *Optis Cellular Technology LLC v. Apple Retail UK Ltd* [2025] EWCA 552 (Pat). Parties arbitrate (F)RAND disputes involving U.S. patents before non-U.S. arbitrators.

Velos invokes *Brown v. Duchesne*, 60 U.S. 183 (1857), and *Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007), for the proposition that U.S. patents are territorial. Mot. at 11. But territoriality cuts against Velos here. The China rate-setting proceeding respects territorial limits by declining to rule on U.S. patent validity or infringement. It addresses only what royalty satisfies Velos's RAND commitments—a question that does not sound in patent law. *See HTC Corp*, 12 F.4th at 485 ("act of determining value" of SEP portfolio "is not a patent law action").

Equity only favors TikTok. Velos demanded a worldwide license, defining the dispute as global; TikTok responded by seeking global rate adjudication. Velos cannot demand global royalties then insist on purely domestic proceedings when TikTok seeks rate determination. Moreover, TikTok has acted as a willing licensee while Velos never made a RAND offer. *See* FACC ¶¶ 68, 70-71. Velos filed suit while the parties were still negotiating NDA terms. *Id.* ¶ 71. Equity does not favor a patent holder that refuses to make a licensing offer, sues during preliminary negotiations, then seeks to block the accused infringer from obtaining (F)RAND relief anywhere.

## E. International Comity Weighs Heavily Against an Injunction

Even if any of the *Unterweser* factors favored an injunction here (they do not), the Court must weigh them against international comity. *Karaha Bodas*, 335 F.3d at 366. Comity concerns here are substantial and favor denying an injunction. Velos cites *Laker Airways* for the proposition that courts need not stand idle when foreign courts close courthouse doors. Mot. at 11. But as discussed, *see* Section III.B, *supra*, no Chinese court has issued any order against Velos. As *Laker Airways* explained, only in the most compelling circumstances does a court have discretion to issue an antisuit injunction. *Laker Airways*, 731 F.2d at 927. Anti-suit injunctions are justified when the foreign action is "interdictory and not parallel"—when it seeks to halt the domestic proceeding altogether. *Laker Airways*, 731 F.2d at 927. The Chinese action is a parallel proceeding addressing

separate issues, not an attempt to terminate Velos's U.S. claims.  Under these facts, "[p]roceedings in multiple jurisdictions . . . should be allowed."  *Karaha Bodas*, 335 F.3d at 372 n.59.

Velos contends its requested injunction is "narrowly tailored."  Mot. at 9.  This argument fails for two reasons.  First, narrow tailoring does not cure Velos's failure to satisfy the *Unterweser* factors.  *See MWK Recruiting*, 833 F. App'x at 565.  Second, TikTok has already offered to stipulate to the substance of Velos's requested relief.  Velos asks the Court to enjoin TikTok from "interfere[ing] with this Court's jurisdiction" and "seeking an order compelling Velos to grant a license to United States patents."  Mot. at 12.  TikTok's January 23 letter offered exactly that—a commitment not to "interfere with the jurisdiction of the U.S. District Court for the Western District of Texas to adjudicate the validity and infringement of the United States patents," and a representation that the Chinese action does "not include a claim seeking an order requiring Velos to grant a license to United States patents."  Hardy Decl. Ex. D.  Velos rejected this offer while refusing to make any reciprocal commitment—confirming it seeks not to protect this Court's jurisdiction, but to halt the Chinese action entirely.  *Id.*, Ex. E.

Finally, Velos also requests that TikTok be ordered to email copies of Chinese court filings. Mot. at 6.  As explained above, *see* Section II.D, *supra*, Chinese civil procedure vests document service authority in the court, not the parties.  TikTok cannot unilaterally produce documents in the Chinese court's custody.  Even in *Ericsson*, where an ASI issued, the court declined to order the exact same relief Velos requests here, reasoning "it is not for this Court to require Samsung to operate in a foreign jurisdiction as though it were here."  2021 WL 89980, *8.  That reasoning applies with greater force here, where no foreign court has issued any order against Velos.

## V.    CONCLUSION

The motion for anti-suit injunction should be denied.

Dated: January 30, 2026

Respectfully submitted,

By: /s/ *Kevin Hardy*

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Sean Pak
CA Bar No. 219032 (admitted *pro hac vice*)
seanpak@quinnemanuel.com
Melissa Baily
CA Bar No. 237649 (admitted *pro hac vice*)
melissabaily@quinnemanuel.com
Sam Stake
CA Bar No. 257916 (admitted in W.D. Tex.)
samstake@quinnemanuel.com
Ognjen Zivojnovic
CA Bar No. 307801 (admitted *pro hac vice*)
ogizivojnovic@quinnemanuel.com
**QUINN     EMANUEL     URQUHART     &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Kevin Hardy
D.C. Bar No. 473941 (admitted in W.D. Tex.)
kevinhardy@quinnemanuel.com
**QUINN     EMANUEL     URQUHART     &
SULLIVAN, LLP**
555 13th Street, N.W., Suite 600
Washington, DC 20004
Tel: (202) 538-8000
Fax: (202) 538-8100

Patrick Curran
MA Bar No. 568701 (admitted in W.D. Tex.)
patrickcurran@quinnemanuel.com

21

**QUINN     EMANUEL     URQUHART     &
SULLIVAN, LLP**
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
Fax: (617) 712-7200

Valerie Lozano
CA Bar No. 260020 (admitted *pro hac vice*)
valerielozano@quinnemanuel.com
**QUINN     EMANUEL     URQUHART     &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Attorneys for Defendant TikTok Inc., ByteDance
Ltd., ByteDance Pte. Ltd., ByteDance Inc.,
ByteDance Technology Ltd., TikTok Ltd., and
TikTok Pte. Ltd.*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system on January 30, 2026.

Dated: January 30, 2026     */s/Melissa Smith*_____
             Melissa R. Smith