IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VELOS MEDIA, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BYTEDANCE LTD., BYTEDANCE PTE. LTD., BYTEDANCE INC., BYTEDANCE TECHNOLOGY LTD., TIKTOK LTD., TIKTOK PTE. LTD., AND TIKTOK INC.,<br><br>　　　　Defendants. | Case No. 1:25-cv-00967<br><br>JURY TRIAL DEMANDED<br><br>**FILED UNDER SEAL** |

## DECLARATION OF PROFESSOR YANFANG WANG IN SUPPORT OF DEFENDANTS' OPPOSITION TO VELOS'S ANTI-INTERFERENCE MOTION

I, Yanfang Wang, hereby declare as follows:

　　1.　　I am a full-time Professor in the School of Intellectual Property Law at East China University of Political Science and Law. I joined the faculty in September 2021. I voluntarily submit this declaration in support of the Defendants' opposition to the "anti-interference motion" filed in the U.S. District Court for the Western District of Texas. I have a clear understanding of the facts set forth in this affidavit and I am willing to testify under oath if required.

**Educational Background and Work Experience**

　　2.　　I received my Bachelor of Laws in July 1996 from Zhongnan University of Economics and Law (formerly known as Zhongnan University of Political Science and Law), my Master of Laws in May 2001 from Temple University and another Master of Laws in December 2008 from University of London School of Oriental and African Studies; and my Doctor of Law in June 2019 from Renmin University of China. I thus hold degrees from China, the United States and the United Kingdom. I have been a visiting scholar at Stanford University, University of

1

Washington, the Max Planck Institute ("MPI") in Germany, and the Japanese International Cooperation Agency ("JICA") in Japan, where I conducted studies on network copyright, patent law, well-known trademarks, and Japanese Intellectual Property Law, and participated in the International Visitor Leadership Program ("IVLP") on antitrust law.

3. Prior to my appointment as a Professor of East China University of Political Science and Law, I worked in the Intellectual Property Division of the Supreme People's Court ("SPC") for twenty-five years and served as the presiding judge and a second-level judge. I have twenty-five years of experience in IP trials and have dealt with or tried thousands of IP cases and drafted judicial interpretations such as the *Provisions of the Supreme People's Court on Several Issues concerning the Application of the Law in Trials of Civil Disputes Involving the Infringement of the Right of Communication Through Information Networks*.

4. During my time working for the SPC, I was awarded the National Advanced Individual in Intellectual Property Protection.

5. In addition to my role as a Professor, I am a member of the expert database of the Supreme People's Procuratorate, a member of the expert database of the State Intellectual Property Office for responding to overseas intellectual property disputes, a member of the expert group and arbitrator of the World Intellectual Property Organization ("**WIPO**"), an arbitrator of Hong Kong International Arbitration Centre ("**HKIAC**"), an arbitrator of Shenzhen Court of International Arbitration ("**SCIA**"), and a member of the arbitral tribunal and expert pool of the Patent Mediation and Arbitration Centre of the Unified Patent Court ("**PMAC**"). I was invited to give lectures to the judges in the first WIPO "Master Class on IP Adjudication," and was invited by the World Trade Organization to teach Chinese Intellectual Property Law to professors from 26 countries. I have written several academic papers in the field of Trademark Law, Copyright Law,

2

and Anti-unfair Competition, which have been published in Chinese mainstream law journals such as Peking University Law Journal, Tribune of Political Science and Law, and Intellectual Property. In November 2022, my monograph titled *On the Value of Anti-Unfair Competition Law* was published by China's top publishing house, the Commercial Press.

6. One of my main areas of practice is unfair competition and anti-monopoly law. I have opined on Chinese law concerning FRAND in FRAND determinations before the Patents Court in the Business and Property Courts of England and Wales, and I have provided expert opinions on Chinese law in SEP cases in the United Kingdom, such as *Nokia v. OPPO*, *InterDigital v. OPPO*, and *MediaTek v. Huawei*.

7. As a result, I have in-depth expertise in the Chinese legal system, academic theory and judicial practice of intellectual property and competition law, and I also have extensive practical experience in civil litigation and administrative procedures in intellectual property and competition cases.

8. A short biography of my work and experience can be found at **Exhibit 1**.

9. My native language is Mandarin, but I can read and write English well. I am comfortable in providing my written expert opinions in English. I confirm, having read the declaration, that it expresses my honestly-held opinions. If I am to provide testimony, I would require a translator.

**Western District of Texas Action**

10. I understand that Velos Media, LLC ("Velos") filed a lawsuit on June 24, 2025, accusing the Defendants of infringing six patents that Velos claims are essential to the H.265 standard.

3

**Chongqing Action and Anti-Interference Injunction**

11. I have reviewed the civil complaint ("Complaint") filed by Bytedance Ltd., Bytedance Technology Ltd., and Chongqing Jinritoutiao Information Technology Co., Ltd. ("Chinese Action TikTok Plaintiffs") in the Chongqing No. One Intermediate People's Court (重庆市第一中级人民法院) against Velos Media, LLC, Velos Media International Limited, and TechStream, LLC ("Chinese Action Velos Defendants") on November 24, 2025. In the Complaint, Chinese Action TikTok Plaintiffs request that the court: (1) order global licensing terms consistent with the principles of fair, reasonable, and non-discriminatory (FRAND) treatment; (2) order Chinese Action Velos Defendants to pay all litigation proceeding fees; and (3) order Chinese Action Velos Defendants to pay for TikTok's reasonable costs of the suit.

12. I understand that on January 16, 2026, Velos filed a Motion for Anti-Interference Injunction ("Motion") asking the Court to enter an "anti-interference" injunction ordering the Defendants and their affiliates not to: "(1) take actions in a foreign tribunal that would interfere with this Court's jurisdiction over this matter, including adjudicating the validity or infringement of Velos's United States patents; or (2) take actions in a foreign tribunal that would deprive Velos and its affiliates of their right to assert or voluntarily license the full scope of its United States patent rights, including by seeking an order compelling Velos to grant a license to United States patents to ByteDance on terms adjudicated by a foreign tribunal." Mot. at 12. Velos further requests that Defendants "be ordered to promptly email copies of any papers filed or issued by the Chinese court." *Id.*

13. In its motion, Velos describes the Chinese Action TikTok Plaintiffs as "secretly" filing the Chinese action and represents that "[d]espite filing this case in November 2025,

4

ByteDance did not provide a copy or notice of the Chinese complaint to Velos until shortly before Christmas." Mot. at 3-4.

**Chinese Civil Procedure Regarding Service**

14. In Chinese civil procedure, the court bears exclusive responsibility for serving the complaint, supporting evidence, summons, and all other litigation documents upon the defendant. The plaintiff has no legal obligation to inform the defendant that an action has been commenced, nor is the plaintiff required to furnish the defendant with copies of the complaint or evidentiary materials submitted to the court. According to my years of judicial experience, under the Chinese litigation system, it is uncommon for plaintiffs to independently notify defendants of pending litigation following the filing of a lawsuit. This principle applies throughout the litigation process more broadly—documents submitted by either party are first reviewed by the court and then the court will serve the documents to parties as prescribed by the Civil Procedure Law, such as the complaint and evidence. For the other documents generated throughout litigation, the court determines in its discretion whether to transmit materials to the opposing party. Litigants, including the plaintiff, cannot control the Chinese court's processing and service timeline.

15. In cases involving foreign entities, where a party lacks domicile within the territory of the People's Republic of China, Chinese courts may employ various service methods as prescribed by law, including service pursuant to international conventions, service through diplomatic channels, service by mail, service by facsimile or electronic mail, and service by public announcement.

16. Velos asks the Court to order Defendants "to promptly email copies of any papers filed or issued by the Chinese court." That would be inconsistent with the applicable rules of civil procedure in China. In accordance with the procedure described above, the Chinese court will

5

serve documents generated throughout the litigation to Chinese Action Velos Defendants or via their counsel. Only the court in China can exercise the right to serve court papers on the litigants.

**FRAND Litigation in Chinese Courts**

17. Chinese courts place significant emphasis on protecting legitimate rights, including patent rights, and afford equal treatment to Chinese and foreign parties in judicial proceedings. And for some particular procedural aspects, foreign parties enjoy even more favorable treatment than Chinese parties. For example, the answering period upon service and the appeal period against a judgment are both 15 days for Chinese parties and 30 days for foreign parties. Foreign rights holders are able to vindicate their intellectual property interests through litigation in China, and there are numerous recent examples of foreign plaintiffs prevailing in IP disputes against Chinese defendants. For example, the German pharmaceutical and medical device company Bayer received a settlement amount of RMB 24.3 million from a Chinese defendant as a result of active mediation by the court in the patent infringement dispute instituted by Bayer against the company.[1]

18. China has developed a sophisticated and specialized judicial infrastructure for the adjudication of intellectual property disputes, including those involving standard essential patents. In 2014, China established dedicated Intellectual Property Courts in Beijing, Shanghai, and Guangzhou, followed by the creation of the Intellectual Property Tribunal of the Supreme People's Court in 2019, which primarily serves as a centralized appellate body for patent cases nationwide. In addition, numerous Intermediate People's Courts across China have established specialized IP divisions staffed by judges with expertise and experience in patent law. Chinese courts handle a substantial volume of IP litigation—among the highest in the world—providing judges with extensive experience in complex patent matters, licensing disputes, and FRAND-related issues.

---

[1] https://english.cnipa.gov.cn/art/2024/11/27/art_3090_196304.html

19. Chinese courts have regularly adjudicated disputes involving standard essential patents, and several Chinese courts have accepted jurisdiction to determine global royalty rates for SEP portfolios. In *OPPO v. Sharp*, for example, the Shenzhen Intermediate People's Court accepted OPPO's lawsuit seeking determination of global licensing terms—including royalty rates—for Sharp's Wi-Fi, 3G, and 4G SEP portfolios as applied to OPPO's smart terminal products. When Sharp challenged the court's jurisdiction, the Shenzhen Intermediate People's Court issued a ruling that, for the first time, expressly affirmed Chinese courts' willingness to adjudicate global FRAND royalty rates. The court reasoned that judicial determination of global royalty rates promotes overall efficiency, provides a comprehensive resolution of disputes between the parties, and avoids duplicative litigation across multiple jurisdictions—objectives the court found consistent with the underlying purpose of FRAND principles.

20. In determining a global FRAND rate, Chinese courts do not undertake a patent-by-patent adjudication of validity or infringement for each patent in the portfolio at issue. The Chongqing No. One Intermediate People's Court ("Chongqing Court") will not adjudicate the infringement or validity of Velos's U.S. patents either.

21. While litigants in Chinese FRAND rate-setting proceedings typically request that the court determine royalty rates for patents that are "valid and genuinely essential" to the relevant standard, Chinese courts do not, in practice, conduct individualized adjudications of validity or essentiality for each patent within the asserted portfolio. Instead, the court's analysis proceeds at the portfolio level, treating the SEP holder's declared patent families as a collective body of rights rather than examining whether each individual patent is, in fact, valid and truly essential to the standard. For example, in cases in which courts estimate the portfolio's contribution to the aggregate royalty stack, courts may rely on proxies such as the number of declared patent families,

third-party essentiality studies, or sampling-based assessments of essentiality rates—methodologies that provide statistical approximations rather than definitive legal determinations regarding any single patent. Accordingly, although the resulting royalty rate is nominally tied to a portfolio of "valid and genuinely essential" patents, the judicial determination does not constitute a ruling on the validity or essentiality of any particular patent within that portfolio, and individual patents remain subject to separate challenge in appropriate invalidity, non-essentiality, and/or non-infringement proceedings before a competent government body, such as the patent office, or a court in a corresponding jurisdiction where the patent was issued. Chinese courts strictly adhere to the rule of territoriality in adjudication of IP-related matters in terms of validity and infringement.

22. As an example, in a rate-setting action filed by Oppo against Nokia and adjudicated by the Chongqing Court, Oppo asked the court to set a global rate for Nokia's worldwide cellular patent portfolio, and requested the court to decide the global rate for Nokia's truly essential and valid patents. The Chongqing Court analyzed the patents at a portfolio level, relying on the above-mentioned proxies produced by the litigants. In setting a global FRAND royalty rate, the Chongqing Court did not adjudicate the validity or essentiality of any particular patent within the portfolio.

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct. Executed on January 30 2026.

_____
Yanfang Wang